# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **CHRISTOPHER Q. WAGNER and RONDA S. WAGNER f/k/a RONDA S. HUZSEK,** | : : : : | Bankruptcy No. 08-21495 BM |
| **Debtors** | : | **Chapter 7** |
| **DOLLAR BANK, FEDERAL SAVINGS BANK,** | : : : | |
| **Plaintiff** | : : | Adversary No. 08-2242 BM |
| v. | : : : | **Complaint Objecting To Discharge Of Debtor Pursuant To § 727 And** |
| **CHRISTOPHER Q. WAGNER,** | : : | **To Determine Dischargeability Of Of Debts Pursuant To § 523** |
| **Defendant** | : | |

Appearances:    Joseph A. Fidler, Esquire for Plaintiff
Steven T. Shreve, Esquire for Defendant

### MEMORANDUM OPINION

Plaintiff Dollar Bank seeks a determination pursuant to § 523(a)(2) (B) of the Bankruptcy Code that a specific debt owed to it by debtor Christopher Wagner is not dischargeable.  It also seeks to have debtor denied a discharge of all his debts in accordance with § 727(a) of the Bankruptcy Code.

Judgment will be entered in favor of debtor and against Dollar Bank for reasons set forth in this memorandum opinion.

## BACKGROUND

Debtor Christopher Wagner and his father, Thomas Wagner, formed IPI Investments in December of 2005. IPI Investments provided mortgages to third parties to purchase residential properties that had been rehabilitated. It eventually ceased doing business and was dissolved. Debtor and his father each had a 50% interest in IPI Investments.

IPI Investments applied to Dollar Bank in July of 2006 for a line of credit. Debtor and his father prepared and submitted written personal financial statements in connection with the loan application. This was not the first time that debtor and his father had applied to Dollar Bank for a loan. Debtor and his father previously had submitted written financial statements and executed two promissory notes in favor of Dollar Bank in the year 2004 for lines of credit for other entities which they controlled. Both loans subsequently were paid in full.

On his personal financial statement submitted in connection with the loan application of IPI Investments, debtor's father listed personal assets worth $2,835,435 and liabilities totaling $436,920. His declared net worth was $2,398,345.

On his personal financial statement, debtor listed assets worth $546,350 and liabilities totaling $344,000. His declared net worth was $202,350. Debtor did not sign the financial statement before submitting it to Dollar Bank.

Dollar Bank subsequently approved the loan application of IPI Investments.

The loan closing took place on August 6, 2006, at which time debtor and his father executed a promissory note on behalf of IPI Investments as its "managers". They also executed the note on behalf of themselves as individuals. Debtor did not sign his financial statement at the closing.

On August 9, 2006, three days after the closing, Dollar Bank disbursed $20,250 of the line of credit to IPI Investments. The remainder of the line of credit was disbursed by September 15, 2006. Debtor still had not signed his personal financial statement by the time of the first disbursement. He did not sign it until August 10, 2006, three days after the closing and two days after the first disbursement.

Debtor and his wife, Ronda Wagner, filed a voluntary chapter 7 petition on March 8, 2008. A chapter 7 trustee was put in place shortly thereafter. On their bankruptcy schedules, they listed assets with a total declared value of $207,448 and liabilities totaling $500,765. Dollar Bank was identified as having an undisputed general unsecured claim in the amount of $130,305 for unspecified loans which debtor Christopher Wagner had "guarantied".

The chapter 7 trustee reported on April 22, 2008, after concluding the § 341 meeting, that no assets of debtors' bankruptcy estates would be available for distribution to their creditors.

Dollar Bank thereafter commenced this adversary action against debtor Christopher Wagner. His co-debtor wife was not named as a defendant. The complaint consisted of two counts. It sought a determination in Count I that the debt owed to it

by debtor was not dischargeable in light of § 523(a)(2)(A) of the Bankruptcy Code.  In Count II, it asserted that debtor should be denied a discharge of all his debts pursuant to § 727(a) of the Bankruptcy Code.

The case was tried and is ready for decision at this time.

## Count I

## § 523(a)(2)(A)

Section 523 of the Bankruptcy Code provides in part as follows:

> (a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt – ....
>     (2) for money ..., to the extent obtained, by -- ....
>         (A)  use of a statement in writing  ---
>             (I)   that is materially false;
>             (ii)  respecting the debtor's ... financial condition;
>             (iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and
>             (iv) that the debtor caused to be made or published with intent to deceive ....

11 U.S.C. § 523(a)(2)(B).

Bankruptcy has two fundamental purposes, one equitable and the other rehabilitative. On the one hand, it provides an efficient means for efficient and equitable distribution of a debtor's assets to creditors.  On the other, it is a device for providing a debtor with a "fresh start" by relieving the debtor of outstanding debts and permitting the debtor to reorganize his or her affairs. *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 251 (3d Cir 2001).

Bankruptcy is not only an ameliorative right of the debtor. It also provides creditors with a remedy in certain instances. Providing the debtor with a "fresh start" is not always of paramount importance; at times it is of secondary importance and must take a back seat to protecting the rights of the debtor's creditors. *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 311(3d Cir 2002). Such instances are set forth at § 523(a) of the Bankruptcy Code. Because they impinge on a debtor's "fresh start", however, the exceptions to discharge of a specific debt which are set forth in § 523(a) are strictly construed in favor of the debtor and against the creditor. In re *Mehta,* 310 F.3d at 311.

To prevail under § 523(a)(2)(B), a creditor objecting to the discharge of a debt owed to it by the debtor must prove that: (1) the debtor provided the creditor with a written statement which was materially false; (2) the written statement pertained to the debtor's financial condition; (3) the creditor reasonably relied on the financial statement; and (4) the debtor intended to deceive the creditor. *Insurance Co. of North America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir 1995). The objecting creditor has the burden of proving all of these requirements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

The concept of material falsity set forth at § 523(a)(2)(B)(I) and the concept of reasonable reliance set forth at § 5423(a)(2)(B)(iii) both contain a reliance element. They "overlap", but differ in a critical respect. *In re Cohn*, 54 F.3d at 1115.

A false statement is material for purposes of § 523(a)(2)(B)(I) if and only if it influences a creditor's decision to extend credit. Actual reliance on the part of the creditor is not necessary. A false statement is material for the purposes of § 523(a)(2)(A)(I) when it is sufficiently "substantial" that a reasonable person *would have relied* on it. *In re Cohn*, 54 F.3d at 1114.

In contrast to § 523(a)(2)(B)(I), § 523(a)(2)(B)(iii) requires that the creditor in fact – i.e., actually – rely on the false statement in deciding to extend credit. If the creditor does not actually rely on the false statement in deciding to extend credit even when it would have been reasonable to do so, § 523(a)(2)(B)(iii) is not satisfied. *In re Cohn*, 54 F.3d at 1115.

Unless a creditor actually relies upon a false statement, the question whether a creditor's reliance on a false statement was reasonable does not arise. Reasonable reliance presupposes actual reliance.

Dollar Bank's sole witness, who processed the loan application of IPI Investments, testified at trial that Dollar Bank actually relied on the information in debtor's written financial statement when it decided to approve the loan application of IPI Investments.

Despite such self-serving testimony, other testimony by the same witness does not readily harmonize with his testimony that Dollar Bank actually relied. In response to a hypothetical question posed during cross-examination, the witness testified that Dollar Bank would have approved the loan application of IPI Investments

if only debtor's father had applied for the loan and submitted a personal financial statement. This answer "let the cat out of the bag" concerning whether Dollar Bank actually relied on debtor's financial statement.

The reason why Dollar Bank would have approved the loan if only debtor's father had submitted a personal financial statement is not hard to figure. It would have approved the loan application under such a scenario because the financial statement of debtor's father indicated a net worth approximating $2,400,000. His net worth alone would have provided Dollar Bank with sufficient comfort that the risk in approving a line of credit in the amount of $50,000 for IPI Investments was worth taking.

This latter testimony of Dollar Bank's witness indicates that debtor's financial statement played no part in the decision of Dollar Bank to approve the loan application of IPI Investments, from which it in turn follows that Dollar Bank did not actually rely on debtor's personal financial statement. Dollar Bank's insistence that debtor file a personal statement was an empty "requirement".

Dollar Bank did nothing at trial to reconcile the testimony that it would not have approved the loan application had debtor not submitted a personal financial statement with the testimony that it would have approved the loan application had debtor's father alone submitted a personal financial statement. Dollar Bank, which has the burden of proof in this instance, produced nothing at trial to "harmonize" the former testimony with the latter.

The matter does not end there. Events surrounding the loan transaction lend support to the inference that Dollar Bank did not actually rely on debtor's personal financial statement when it decided to approve the loan application of IPI Investments.

Debtor, it was pointed out previously, did not sign his personal financial statement prior to the loan closing that took place on August 7, 2006.

Dollar Bank's witness testified at trial that the failure to have debtor sign his personal statement prior to the closing was due to a "mistake". We understood him to mean by this statement that its failure to have debtor sign his personal financial prior to the closing was the result of a "mere" oversight on its part. This testimony was not credible. Failure to have debtor sign his personal financial statement before the closing was not the result of a "mere" oversight on the part of Dollar Bank.

On August 9, 2006, two days after the closing, Dollar Bank disbursed $20,250 of the $50,000 line of credit it had approved for IPI Investments. Debtor still had not signed his personal financial statement by then; he did not do so until August 10, 2006, the day *after* the initial disbursement.

Had Dollar Bank actually relied on debtor's personal financial statement in approving the loan application, it defies belief that Dollar Bank would not have realized prior to the loan closing that debtor had not signed it. Failure on its part to realize this indicates that Dollar Bank did not even consider debtor's financial statement, let alone rely on it, in deciding to approve the loan application.

We conclude in light of the foregoing considerations that Dollar Bank's § 523(a)(2)(B) action must fail because it failed to prove that it actually relied on debtor's written personal financial statement, as is required by § 523(a)(2)(B)(iii). There is no need in light of this decision to determine whether any of the other requirements of § 523(a)(2)(B) were satisfied in this instance.

## Count II

## § 727(a)

Section 727 of the Bankruptcy Code provides in part as follows:

> (a) The court shall grant the debtor a discharge unless --- ....
> (3) the debtor has ... falsified ... any recorded information, including books, documents, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such ... act ... was justified under all of the circumstances of the case;
> (4) the debtor knowingly and fraudulently, in or in connection with the case ---
> (A) made a false or account;... [or]
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities ....

11 U.S.C. § 727(a).

It is not altogether clear which subsections of § 727(a) Dollar Bank relies on in Count II of its complaint. Dollar Bank appears to maintain that debtor should be denied a discharge of all his debts in accordance with the above subsections of § 727(a).

Subsection 727(a), which itself is comprised of twelve subparts, provides that a debtor "shall" be granted a discharge "unless" one of the subparts applies. Such language indicates that § 727(a) must be construed liberally in favor of the debtor and against the party objecting to the debtor's discharge. Applying one of the exceptions to granting the debtor a general discharge is an "extreme measure" and must not be undertaken lightly. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir 1993).

The party objecting to the discharge of all of debtor's obligations has the burden of proving that the case falls within one of the enumerated exceptions set forth at § 727(a). *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir 1993). It must do so by a preponderance of the evidence. *Scott v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th Cir. 1999).

The court inquired before trial began whether Dollar Bank still intended to pursue its claim that debtor should be denied a discharge of all his debts in accordance with § 727(a). The question arose because Dollar Bank mentioned the claim only in passing in its pre-trial stipulation. Virtually all of Dollar Bank's attention was devoted to § 523(a)(2)(B) claim. Counsel to Dollar Bank responded to the question in the affirmative. In our estimation, counsel was not serious about this claim when he answered in the affirmative.

We need not set forth the specific requirements for §§ 727(a)(3), (a)(4) and (a)(5) and then determine whether those requirements have been satisfied in this case.

The inadequacy of Dollar Bank's case against debtor is apparent even before we reach this issue.

Dollar Bank called debtor to testify as a hostile witness. The result was a confusing hodge-podge of testimony which overwhelmingly pertained to its § 523(a)(2)(B) claim.

Dollar Bank did not indicate to the finder of fact which portions of debtor's confusing testimony were supposed to relate to the above-quoted provisions of § 727(a). Instead of providing such guidance, Dollar Bank left it to the court to rummage through the testimony on its own and to decide whether any portions of it applied to one of the above subparts of § 727(a). Because the burden of so doing lies with Dollar Bank, we decline its invitation to undertake to do this on its behalf.

We therefore conclude that the claim set forth in Count II of the complaint in this adversary action also must fail for lack of proof.

An appropriate order will issue.

      /s/ Bernard Markovitz
      **BERNARD MARKOVITZ**
      U.S. Bankruptcy Judge

Dated: **September 15, 2009**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **CHRISTOPHER Q. WAGNER and RONDA S. WAGNER f/k/a RONDA S. HUZSEK,** | : : : : | Bankruptcy No. 08-21495 BM |
| Debtors | : | Chapter 7 |
| **DOLLAR BANK, FEDERAL SAVINGS BANK,** | : : : | |
| Plaintiff | : : | Adversary No. 08-2242 BM |
| v. | : : | Complaint Objecting To Discharge Of Debtor Pursuant To § 727 And |
| **CHRISTOPHER Q. WAGNER,** | : : | To Determine Dischargeability Of Of Debts Pursuant To § 523 |
| Defendant | : | |

## ORDER OF COURT

**AND NOW**, this **15th** day of **September**, 2009, for reasons set forth in the preceding memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that judgment in this adversary action **SHALL BE** and hereby is entered **IN FAVOR** of defendant/debtor Christopher Q. Wagner and **AGAINST** plaintiff Dollar Bank, Federal Savings Bank.

It is **SO ORDERED**.

       /s/ Bernard Markovitz
       **BERNARD MARKOVITZ**
       U.S. Bankruptcy Judge

cm:  Christopher Q. and Ronda S. Wagner
      Joseph A. Fidler, Esquire
      Steven T. Shreve, Esquire
      Carlota M. Böhm. Esquire
      Office of United States Trustee